**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

ERVIN HILTON, JR.,

    Petitioner,

vs.                                       Case No.:    3:15-cv-575-J-34PDB
                                                                         3:13-cr-30-J-34PDB

UNITED STATES OF AMERICA,

    Respondent.

_____/

**ORDER**

This case is before the Court on Petitioner Ervin Hilton, Jr.'s Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 1, Motion to Vacate)[1] and Memorandum in Support (Civ. Doc. 3, Memorandum). The United States has responded (Civ. Doc. 7, Response). Hilton also amended his § 2255 motion to add a claim that his Armed Career Criminal Act (ACCA) sentence is unlawful in light of Johnson v. United States, 135 S. Ct. 2551 (2015). (Civ. Doc. 8, Motion to Amend). The United States has responded to this claim as well (Civ. Doc. 15, Supplemental Response), and Hilton has replied (Civ. Doc. 18, Reply).

Pursuant to 28 U.S.C. § 2255 and Rule 8(a) of the Rules Governing Section 2255 Proceedings[2], the Court has considered the need for an evidentiary hearing and

---

[1] Citations to the record in the underlying criminal case, United States vs. Ervin Hilton, Jr., Case No. 3:13-cr-30-J-34PDB, will be denoted as "Crim. Doc. __." Citations to the record in the civil § 2255 case, Case No. 3:15-cv-575-J-34PDB, will be denoted as "Civ. Doc. __."

[2] Rule 8(a) of the Rules Governing Section 2255 Proceedings expressly requires the Court to review the record, including any transcripts and submitted materials, to determine whether an evidentiary hearing is warranted before deciding on a § 2255 motion.

determines that an evidentiary hearing is not necessary to resolve the merits of this action. See Aron v. United States, 291 F.3d 708, 714–15 (11th Cir. 2002) (an evidentiary hearing on a § 2255 petition is not required when the petitioner asserts allegations that are affirmatively contradicted by the record or patently frivolous, or if in assuming the facts that he alleges are true, he still would not be entitled to any relief); Dickson v. Wainwright, 683 F.2d 348, 351 (11th Cir. 1982) ("On habeas a federal district court need not conduct an evidentiary hearing if it can be conclusively determined from the record that the petitioner was not denied effective assistance of counsel."); Patel v. United States, 252 F. App'x 970, 975 (11th Cir. 2007).[3] For the reasons set forth below, Hilton's Motion to Vacate is due to be denied.

## I.     Background

On February 13, 2013, a grand jury sitting in the Middle District of Florida indicted Hilton on five counts of distributing crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Counts One through Five), and one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e) (Count Six). (Crim. Doc. 21, Indictment). The Indictment listed nine prior felony convictions, three of which were for the sale or delivery of cocaine in Duval County, Florida. Id. at 4-5.

Hilton pled guilty to Counts Five and Six under a written plea agreement. (Crim. Doc. 47, Plea Agreement; Crim. Doc. 76, Plea Transcript ["Plea Tr."]). In exchange, the government agreed to dismiss Counts One through Four. Plea Agreement at 3, ¶ A.4. As

---

[3]     Although the Court does not rely on unpublished opinions as precedent, they may be cited throughout this Order as persuasive authority on a particular point. Rule 32.1 of the Federal Rules of Appellate Procedure expressly permits the Court to cite to unpublished opinions that have been issued on or after January 1, 2007. Fed. R. App. P. 32.1(a).

2

part of his plea to Count Six, Hilton specifically pled guilty under 18 U.S.C. §§ 922(g)(1) and 924(e). Id. at 1, ¶A.1. The latter section, § 924(e), is better known as the "Armed Career Criminal Act" or ACCA. It provides for a 15-year mandatory minimum sentence for those who possess a firearm and have three or more prior convictions "for a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1). Hilton admitted that he had nine prior felony convictions, three of which were for: (1) the sale or delivery of cocaine, on or about September 19, 1990; (2) the sale or delivery of cocaine, on or about April 8, 1992; and (3) the sale of cocaine, on or about December 28, 1995. Plea Agreement at 23, ¶¶ 3, 5, 6. During the plea colloquy, Hilton acknowledged that he had these prior convictions and did not contest their existence or validity. Plea Tr. at 11-12, 26-27. Hilton recognized that by virtue of his guilty plea to Count Six, he faced a mandatory minimum prison sentence of 15 years and a maximum sentence of life. Plea Agreement at 2, ¶ A.2; Plea Tr. at 12-13.[4] Having been thoroughly advised by the Court and his attorney about the nature and consequences of pleading guilty, see Plea Tr. at 6-17, Hilton pled guilty to Counts Five and Six, id. at 24. The government read aloud the factual basis, id. at 25-27, which Hilton admitted was true, id. at 27. Hilton affirmed that his guilty plea was free and voluntary, id. at 28, and the Court accepted his plea (Crim. Doc. 51, Acceptance of Plea and Adjudication of Guilt).

At the first part of his sentencing hearing, which took place February 10, 2014, Hilton expressed confusion and frustration about his mandatory minimum, and specifically, the fact that the United States did not file a motion for a substantial assistance reduction.

---

[4] Hilton also acknowledged that he was subject to a 20-year maximum sentence of imprisonment with respect to Count Five, for violating 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). Plea Agreement at 2, ¶ A.2; Plea Tr. at 10-11.

3

(See, Crim. Doc. 77, Sentencing Transcript, Volume I ["Sent. Tr., Vol. I"] at 3-5). Hilton acknowledged that he pled guilty aware that a 15-year mandatory minimum applied, and that he was aware it was within the government's sole discretion to decide whether to move for a substantial assistance reduction. Id. at 4, 15; accord Plea Tr. at 21-22. Nevertheless, Hilton had expected the government to file a substantial assistance reduction because he had tried to cooperate – even though the information he provided did not turn out to be useful. See Sent. Tr., Vol. I at 6-7. Hilton's sentencing counsel, Maurice Grant, relayed that he and Hilton's former counsel, Jim Burke, had tried to explain to Hilton that he was not assured of a substantial assistance reduction. Id. at 9. Despite counsel's efforts to explain the issue, however, Hilton did not seem to understand. Id. at 11. Hilton's confusion was such that Mr. Grant proposed appointing new counsel, id. at 11-12, and the prosecutor suggested that it might be easier to allow Hilton to withdraw his guilty plea and go to trial, id. at 13. Instead of accepting either suggestion at that time, the Court continued the sentencing hearing to allow Mr. Grant and Hilton to decide how he wanted to proceed. Id. at 17-18.

On April 21, 2014, the Court reconvened the sentencing hearing, with Hilton having evidently decided not to withdraw his guilty plea and to keep Mr. Grant as counsel. (See generally, Crim. Doc. 79, Sentencing Transcript, Volume II ["Sent. Tr., Vol. II"]). Neither he nor the government had any objection to the Presentence Investigation Report (PSR) or the Sentencing Guidelines calculations. Id. at 3-4. Consistent with the guilty plea, counsel conceded that Hilton qualified for a sentence under the ACCA. Id. at 10. The Court sentenced Hilton to the mandatory minimum term of imprisonment of 15 years, or 180

months, running concurrently with a 60-month prison sentence on Count Five. Id. at 41-42; (see also Crim. Doc. 72, Judgment).

The Court entered judgment on April 23, 2014. Hilton, who waived the right to appeal under his plea agreement,[5] did not file a notice of appeal.

On April 5, 2015, less than one year later, Hilton timely filed the instant Motion to Vacate. See Motion to Vacate at 13. In the Motion to Vacate, Hilton raises four claims: (1) counsel was ineffective because he misadvised Hilton about the consequences of filing an appeal, which dissuaded him from appealing his ACCA sentence, Memorandum at 3-4; (2) counsel was ineffective for failing to argue that his ACCA predicate convictions were not "serious drug offenses," id. at 4-5; (3) his ACCA sentence is unlawful because the United States failed to provide Shepard[6] documents to support the prior convictions, id. at 6; and (4) he is "actually innocent" of the ACCA sentence, id. at 6-7. Later, Hilton amended the Motion to Vacate to add a claim that his ACCA sentence is illegal in light of Johnson, 135 S. Ct. 2551.

## II. Discussion

Pursuant to Title 28, United States Code, Section 2255, a person in federal custody may move to vacate, set aside, or correct his sentence. Section 2255 permits such collateral challenges on four specific grounds: (1) the imposed sentence was in violation of the Constitution or laws of the United States; (2) the court did not have jurisdiction to impose the sentence; (3) the imposed sentence exceeded the maximum authorized by

---

[5] Plea Agreement at 16, ¶ B.6. Notably, the Court specifically questioned Hilton about the appeal waiver during the plea colloquy, and Hilton affirmed that he accepted the appeal waiver knowingly and voluntarily. Plea Tr. at 23-24.

[6] Shepard v. United States, 544 U.S. 13 (2005).

5

law; or (4) the imposed sentence is otherwise subject to collateral attack. 28 U.S.C §2255(a) (2008). Only jurisdictional claims, constitutional claims, and claims of error that are so fundamentally defective as to cause a complete miscarriage of justice will warrant relief through collateral attack. United States v. Addonizio, 442 U.S. 178, 184-86 (1979). A petitioner's challenge to his sentence based on a Sixth Amendment claim of ineffective assistance of counsel is normally considered in a collateral attack. United States v. Teague, 953 F.2d 1525, 1534 n. 11 (11th Cir. 1992). Likewise, a petitioner's claim that he was illegally sentenced under the ACCA is cognizable on collateral review. Spencer v. United States, 773 F.3d 1132, 1143 (11th Cir. 2014) (en banc).

As with any Sixth Amendment ineffective assistance of counsel claim, a § 2255 petitioner must demonstrate both: (1) that his counsel's conduct amounted to constitutionally deficient performance, and (2) that his counsel's deficient performance sufficiently prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984); Weeks v. Jones, 26 F.3d 1030, 1036 (11th Cir. 1994). In determining whether the petitioner has satisfied the first requirement, i.e. that counsel performed deficiently, the Court adheres to the standard of reasonably effective assistance. Weeks, 26 F.3d at 1036. The petitioner must show, in light of all the circumstances, that counsel's performance fell outside the "wide range of professionally competent assistance." Id. To satisfy the second requirement, that counsel's deficient performance prejudiced the defendant, the petitioner must show that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. Id. at 1036-37 (citing Strickland, 466 U.S. at 694). In determining whether a petitioner has met the two prongs of deficient performance and prejudice, the Court considers the totality of the evidence. Strickland, 466 U.S. at 695.

6

However, because both prongs are necessary, "there is no reason for a court… to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697; see also Wellington v. Moore, 314 F.3d 1256, 1261 n. 1 (11th Cir. 2002) ("We need not discuss the performance deficiency component of [petitioner's] ineffective assistance claim because failure to satisfy the prejudice component is dispositive.").

### A. Ground One

At first blush, Hilton's claim might be read as suggesting either that counsel failed to file an appeal as instructed, or that counsel failed to consult him about an appeal. See Motion to Vacate at 4. However, careful reading of Hilton's filings reveals that such is not the true nature of his claim. Rather, Hilton alleges that

> counsel misinformed Petitioner that he would be prosecuted on the counts dismissed by the Government pursuant to the plea agreement, and sentenced to an additional twenty (20) years imprisonment if he elected to pursue a direct appeal from the judgment of conviction. Petitioner maintains that, based solely upon this advice of counsel, he succumbed to counsel's reluctance and refusals to proceed with an appeal.

Memorandum at 3 (emphasis added). Hilton further alleges that he "was induced to forfeit his appeal solely upon reliance on the misadvice of counsel regarding the consequences of pursuing such an appeal." Id. at 4 (emphasis added). Hilton's claim implies that counsel discussed an appeal with him, advised against it, and that Hilton followed counsel's advice. What Hilton alleges is not that he directed counsel to file an appeal and counsel failed to do so, or that counsel failed to consult him about an appeal. Instead, Hilton argues that counsel misadvised him about the consequences of appealing his sentence, and that he relied on the alleged misadvice in deciding to forego an appeal.

7

Even assuming that counsel advised Hilton as he alleges, the Court does not find that counsel's advice was so objectively unreasonable as to be deficient under Strickland.[7] When Hilton pled guilty, he knowingly and voluntarily waived the right to appeal his sentence. Plea Agreement at 16, ¶ B.6; Plea Tr. at 23-24. As explained below, had Hilton appealed anyway, he would have either (1) been in breach of the plea agreement, or (2) circumvented the appeal-waiver by arguing that the guilty plea was not knowing and voluntary. Either route could theoretically have put Hilton back in a position where he was facing charges on Counts One through Four and a lengthier sentence, just as counsel warned.

As for the first possibility, the Plea Agreement allowed Hilton to file an appeal only if (a) his sentence exceeded the "applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines," (b) the sentence exceeded the statutory maximum, or (c) the sentence allegedly violated the Eighth Amendment. Plea Agreement at 16, ¶ B.6 (emphasis in original). Since the Court imposed the ACCA's mandatory minimum, the only exception that Hilton could arguably have invoked is the second one, i.e., that the allegedly erroneous ACCA sentence exceeded the 10-year statutory maximum normally applicable under 18 U.S.C. § 922(g)(1). However, invoking this exception would ignore two facts: (1) Hilton specifically pled guilty to being an armed career criminal and admitted that he had the prior convictions necessary to support the ACCA enhancement, and (2) Hilton also pled guilty to distributing crack cocaine under 21

---

[7] The Court also notes that Hilton's attorney, Mr. Grant, is a seasoned federal public defender who is well-known to the Court and the defense bar. There is a strong presumption that counsel's performance was reasonable, and that presumption becomes even stronger when examining the performance of experienced trial counsel. Zakrzewski v. McDonough, 455 F.3d 1254, 1258 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1314, 1316 (11th Cir. 2000)).

U.S.C. § 841(b)(1)(C), which carries a 20-year maximum prison sentence, such that his 15-year overall sentence did not exceed the statutory maximum. Thus, had Hilton appealed his sentence, he would not have fallen within one of the appeal-waiver's exceptions. In other words, he would have been in breach of the Plea Agreement.

"A defendant's substantial breach of a plea agreement generally frees the government from its obligations under the agreement." United States v. Salmona, 810 F.3d 806, 811 (11th Cir. 2016) (citing United States v. Kelly, 337 F.3d 897, 901 (7th Cir. 2003)); see also United States v. Young, 671 F. App'x 754, 754-55 (11th Cir. 2016). Obviously, the appeal-waiver was significant enough to the government that it negotiated for it and included it in the written Plea Agreement. Thus, violating the appeal-waiver would have constituted a substantial breach. As a consequence, the government might have been released from its obligation to dismiss Counts One through Four (each of which carried a potential prison sentence of 20 years under 21 U.S.C. § 841(b)(1)(C)), thereby exposing Hilton to these charges and a longer sentence. As another court observed,

> because any appeal would breach his obligations under the favorable plea agreement, Matthews would likely have received a longer prison sentence if he chose to file a notice of appeal. Surely, no rational defendant would have chosen to appeal when there was literally no upside-and potentially a significant downside-to doing so.

United States v. Matthews, 384 F. App'x 214, 218 (4th Cir. 2010).

It is debatable whether breaching the appeal-waiver here would have automatically released the government from all of its obligations under the Plea Agreement, including the promise to dismiss Counts One through Four. See Salmona, 810 F.3d at 811-12. Hilton's Plea Agreement simply does not specify what the consequence would be for breaching the appeal-waiver. However, other courts have recognized that breaching an

appeal-waiver can lead to harsh consequences, including the reinstatement of charges. See, e.g., Matthews, 384 F. App'x at 218; Elswick v. United States, 474 F. Supp. 2d 803, 809-10 & n.5 (E.D. Va. 2007) (observing that filing an appeal in breach of the plea agreement could jeopardize the benefits of the agreement, including the dismissal of other charges). While Hilton's Plea Agreement is silent about the penalty for breaching the appeal-waiver, this lack of clarity cuts against finding counsel's advice deficient. The Court can only find counsel was deficient if no reasonable lawyer would have performed as counsel did. Chandler, 218 F.3d at 1315-16 (citing Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc)); Smith v. Singletary, 170 F.3d 1051, 1054-56 (11th Cir. 1999). Indeed, even where an attorney's advice turns out to be incorrect, and even if many reasonable lawyers would not have advised their client as counsel did, an "attorney is not liable for an error of judgment on an unsettled proposition of law." Smith, 170 F.3d at 1054. Here, it was unclear whether breaching the appeal-waiver would allow the government to reinstate charges on Counts One through Four, but it was certainly possible. See Matthews, 384 F. App'x at 218; Elswick, 474 F. Supp. 2d at 809-10 & n.5; see also Salmona, 810 F.3d at 811 (breaching the plea agreement releases the government from its obligations). As such, it was not unreasonable for counsel to advise Hilton that filing an appeal would constitute a breach of the plea agreement, which could have led to the reinstatement of Counts One through Four and a lengthier sentence.

A second possibility is that Hilton could have appealed without breaching the Plea Agreement by arguing that his guilty plea was not knowing and voluntary. See United States v. Puentes-Hurtado, 794 F.3d 1278, 1284 (11th Cir. 2015) (a defendant may challenge the knowing and voluntary nature of his guilty plea notwithstanding an appeal-

10

waiver) (citations omitted). Succeeding on this claim, however unlikely, would have had the same downside as breaching the Plea Agreement: it would have led to reinstatement of Counts One through Four and a potentially longer sentence. That is because the remedy for successfully challenging the validity of a guilty plea is that the plea is vacated. United States v. Pierre, 120 F.3d 1153, 1157 (11th Cir. 1997). This would be a double-edged sword: it would release Hilton from his guilty plea, but it would also release the government from its obligations under the Plea Agreement, including the dismissal of Counts One through Four. That would put Hilton back in the position where he started: facing five counts of distributing crack cocaine and one count of possession of a firearm by a convicted felon.

Notably, the government was bullish about its likelihood of winning at trial, given that it had videotapes depicting Hilton's criminal conduct. See Sent. Tr., Vol. I at 13. Had Hilton proceeded to trial, he might have been convicted on all six counts. Under these circumstances, it would not have been unreasonable for counsel to advise Hilton that appealing on the basis that his plea was not knowing and voluntary could lead to the reinstatement of charges and a lengthier sentence.

Therefore, even assuming Hilton's allegations to be true, counsel's advice was not deficient under Strickland. Yet even if counsel's advice were deficient, Hilton was not prejudiced. Hilton specifically alleges that he wanted to appeal to challenge his ACCA sentence. Motion to Vacate at 4. Had he done so, the appeal would have been dismissed as barred by his knowing and voluntary appeal-waiver. And even if Hilton could have gotten around the appeal-waiver, the appeal would have lacked any merit. Hilton had three prior felony convictions for the sale or delivery of cocaine, in violation of § 893.13(1)(a),

11

Fla. Stat. (Civ. Doc. 7-4, 1990 Judgment; Civ. Doc. 7-5, 1992 Judgment; Civ. Doc. 7-6, 1995 Judgment). The Eleventh Circuit has held, over and over again, that a conviction for the sale or delivery of cocaine under § 893.13(1)(a) is a "serious drug offense" under the ACCA. E.g., United States v. Smith, 775 F.3d 1262, 1268 (11th Cir. 2014); United States v. Lenzy Johnson, 663 F. App'x 738, 740 (11th Cir. 2016); United States v. Williams, 605 F. App'x 833, 835-37 (11th Cir. 2015); United States v. Russell Johnson, 570 F. App'x 852, 856-57 (11th Cir. 2014). Thus, Hilton had three prior convictions that plainly qualified as a "serious drug offense" under the ACCA, and as such, he was properly sentenced as an armed career criminal.

In light of the foregoing, Hilton has failed to establish either that counsel's performance was deficient or that he suffered prejudice. Accordingly, Ground One lacks merit and relief is due to be denied.

**B. Ground Two**

In Ground Two, Hilton alleges that counsel was ineffective for not contesting whether his prior convictions qualified as ACCA "serious drug offenses." Specifically, Hilton alleges that at the time of his prior convictions for the sale or delivery of cocaine, § 893.13(1)(a), Fla. Stat., encompassed the purchase of cocaine. Indeed, effective in 1988, the statute provided that "it is unlawful for any person to sell, purchase, manufacture, or deliver, or possess with intent to sell, purchase, manufacture, or deliver, a controlled substance." § 893.13(1)(a), Fla. Stat. (1988) (emphasis in original). Effective in 1994, the Florida legislature eliminated "purchase" from § 893.13(1)(a). Thus, for Hilton's 1990 and 1992 drug convictions, § 893.13(1)(a) did include the purchase of cocaine within its

definition. By comparison, 18 U.S.C. § 924(e)(2)(A)(ii) defines the term "serious drug offense" to include

> an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. § 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law.

Thus, the mere purchase of cocaine would not qualify as a "serious drug offense" because it does not necessarily involve "manufacturing, distributing, or possessing with intent to manufacture or distribute" a controlled substance. See United States v. Hansley, 54 F.3d 709, 718 (11th Cir. 1995) (simple possession does not qualify as an ACCA serious drug offense because it does not necessarily involve manufacturing, distributing, or possessing with intent to manufacture or distribute).

Hilton's claim fails, however, for two reasons. First, Hilton's words and actions gave counsel every reason to believe that it would be pointless to contest whether he had three prior convictions for a "serious drug offense." "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant." Strickland, 466 U.S. at 691. Well before the sentencing hearing, Hilton specifically pled guilty under 18 U.S.C. §§ 922(g)(1) and 924(e) to being an armed career criminal. Plea Agreement at 1, ¶ A.1. He admitted that he had the prior convictions necessary to support the ACCA enhancement, including three prior convictions for the sale or delivery of cocaine. Plea Agreement at 23, ¶¶ 3, 5, 6; Plea Tr. at 11-12, 26-27. He further acknowledged that he pled guilty aware that he was subject to the ACCA's 15-year mandatory minimum. Plea

13

Agreement at 2, ¶ A.2; Plea Tr. at 12-13; Sent. Tr., Vol. I at 4, 15-16. Thus, Hilton's conduct gave counsel no reason to believe that he should dispute whether Hilton's prior convictions qualified as ACCA serious drug offenses. As such, counsel's performance was not unreasonable.

Second, counsel's performance was not deficient because Hilton's three convictions for the sale or delivery of cocaine were indeed serious drug offenses. The government submitted the judgments for each of these convictions along with its Response. 1990 Judgment; 1992 Judgment; 1995 Judgment. The 1990 Judgment and 1992 Judgment each reflect that Hilton was convicted of the "sale or delivery" of cocaine under § 893.13(1)(a), Fla. Stat. The 1995 Judgment reflects that Hilton was convicted of the "sale" of cocaine under § 893.13(1)(a). As noted earlier, the Eleventh Circuit has repeatedly held that a conviction for the sale or delivery of cocaine under § 893.13(1) is a serious drug offense under the ACCA. E.g., Smith, 775 F.3d at 1268. The fact that § 893.13(1) encompassed the "purchase" of cocaine at the time Hilton incurred his 1990 and 1992 convictions does not change the result. United States v. Bailey, 522 F. App'x 497, 498-99 (11th Cir. 2013) (rejecting the argument that because § 893.13(1) once included "purchase" within its definition, that a prior conviction could not count as a "serious drug offense" where the judgment revealed that the conviction was for sale or delivery). Section 893.13(1) is a divisible statute. Gordon v. U.S. Att'y Gen., 861 F.3d 1314, 1319 (11th Cir. 2017) (citing Spaho v. U.S. Att'y Gen., 837 F.3d 1172, 1178 (11th Cir. 2016)).[8] That means that a court may consult Shepard documents, such as a judgment, "to determine the

---

[8]  Gordon and Spaho dealt with the modern version of § 893.13(1)(a), which does not include the act of purchasing. However, there is no reason why the inclusion of the act of purchasing would change the divisibility analysis.

14

particular alternative crime of which the defendant was convicted." United States v. Ramirez-Flores, 743 F.3d 816, 823 (11th Cir. 2014). As mentioned above, each of the judgments state that the conviction was for the "sale" or the "sale or delivery of cocaine," with no mention of "purchase," thus establishing that each conviction was in fact a serious drug offense under the ACCA. Bailey, 522 F. App'x at 499.[9]

Accordingly, Hilton indeed had three prior drug convictions that qualified him for the ACCA sentence. "A lawyer cannot be deficient for failing to raise a meritless claim." Freeman v. Att'y Gen., 536 F.3d 1225, 1233 (11th Cir. 2008). Therefore, Hilton's counsel cannot be found ineffective for not challenging whether his prior convictions were "serious drug offenses." As such, relief on Ground Two is due to be denied.

**C. Ground Three**

In Ground Three, Hilton claims that his ACCA sentence is illegal because "during the underlying sentencing hearing, the Government failed to produce any documentation whatsoever demonstrating beyond a preponderance of the evidence … that Petitioner was convicted of a serious drug offense." Memorandum at 6.

This claim is frivolous. The reason why the government did not tender the judgments of Hilton's prior convictions at the sentencing hearing is that Hilton had already

---

[9] Hilton contends "[t]he Eleventh Circuit has made clear in United States v. Shannon, 631 F.3d 1187, 1189-90 (11th Cir. 2011), that a conviction under Florida law for purchasing cocaine with intent to distribute is not a controlled substance offense, hence not a 'serious drug offense,' as that term is defined by 18 U.S.C. § 924(e)." Memorandum at 5. Hilton is mistaken. Shannon did not deal with the ACCA's definition of a "serious drug offense," but with the meaning of the term "controlled substance offense" under the Sentencing Guidelines' career offender provision, § 4B1.2(b). The two definitions are not identical. Compare 18 U.S.C. § 924(e)(2)(A) with U.S.S.G. § 4B1.2(b). Additionally, Shannon dealt with a prior conviction for trafficking cocaine under § 893.135, Fla. Stat., not for the sale or delivery of cocaine under § 893.13(1). Thus, Shannon is distinguishable and inapposite.

15

admitted he had nine prior convictions, including three for the sale or delivery of cocaine. Plea Agreement at 23, ¶¶ 3, 5, 6; Plea Tr. at 11-12, 26-27. Indeed, throughout Hilton's plea colloquy and sentencing hearings, neither Hilton nor his counsel ever questioned the fact that Hilton qualified for the ACCA classification. See, e.g., Plea Tr. at 12-13 (Hilton acknowledging that he was subject to the 15-year mandatory minimum), id. at 20 (Hilton's counsel forecasting that the Guidelines offense level would be 33 or 34, the level applicable to an armed career criminal); Sent. Tr., Vol. I at 4, 15-16 (Hilton acknowledging that he pled guilty aware that he was subject to a 15-year mandatory minimum); Sent. Tr., Vol. II at 10 (defense counsel stating that Hilton qualified for the ACCA enhancement). Nor did Hilton object to the PSR, id. at 4, which stated that he qualified as an armed career criminal based on three prior convictions for the sale or delivery of cocaine, PSR at ¶ 38. Because Hilton admitted that he had three prior convictions for the sale or delivery of cocaine, the United States was not required to submit Shepard documents to support the prior convictions. United States v. Beckles, 565 F.3d 832, 843 (11th Cir. 2009) (in addition to Shepard materials, the district court "also may base its factual findings on undisputed statements found in the PSI, because they are factual findings to which the defendant has assented."); United States v. Bennett, 472 F.3d 825, 832-34 (11th Cir. 2006) (holding that "the district court did not err in relying on the undisputed facts in Bennett's PSI to determine that his prior convictions were violent felonies under the ACCA."). As such, Hilton's claim that his ACCA sentence is illegal because the government did not come forward with Shepard documents is meritless.

In any event, the government has submitted the judgments from Hilton's 1990, 1992, and 1995 drug convictions. Each judgment reflects that Hilton was convicted for the

sale or delivery of cocaine under § 893.13(1)(a), Fla. Stat. Thus, had Hilton put the government to the burden of establishing that he had three prior convictions for a serious drug offense, the government could and would have done so. As such, Hilton has shown neither deficient performance nor prejudice, and relief on Ground Three is due to be denied.

### D. Ground Four

In Ground Four, Hilton claims that he is "actually innocent" of his ACCA sentence. Memorandum at 6-7. For the reasons set forth under Grounds Two and Three, this argument lacks merit. Each of Hilton's three prior convictions for the sale or delivery of cocaine qualified as a serious drug offense under 18 U.S.C. § 924(e)(2)(A)(ii). As such, Hilton was properly sentenced as an armed career criminal. Relief on this ground is due to be denied.

### E. Ground Five: The <u>Johnson</u> Claim Raised in the Motion to Amend

Finally, Hilton amended his Motion to Vacate to add a claim that his ACCA sentence is invalid in light of <u>Johnson</u>, 135 S. Ct. 2551. This claim lacks merit because <u>Johnson</u> has no bearing on Hilton's case. The Supreme Court held in <u>Johnson</u> that the ACCA's residual clause, which is part of the definition of a "violent felony," is unconstitutionally vague. 135 S. Ct. at 2557-58. However, the Supreme Court made clear to limit its holding to the residual clause, such that the remaining portions of the ACCA remain intact. <u>Id.</u> at 2563. Thus, <u>Johnson</u> affords no relief to those who, like Hilton, were sentenced as an armed career criminal on the basis of three or more prior convictions for a serious drug offense.

United States v. Darling, 619 F. App'x 877, 880 n.5 (11th Cir. 2015). Therefore, relief on this claim is due to be denied.

### III. Certificate of Appealability Pursuant to 28 U.S.C. § 2253(c)(1)

If Hilton seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Hilton "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335–36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

As such, and in accordance with the Rules Governing Section 2255 Cases in the United States District Courts, it is hereby

**ORDERED**:

1. Petitioner Ervin Hilton, Jr.'s Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 1), as amended (Civ. Doc. 8), is **DENIED**.

2. Hilton's motion for an evidentiary hearing and to appoint counsel (Civ. Doc. 18) is **DENIED**.

3. The Clerk shall enter judgment in favor of the United States and against Ervin Hilton, Jr., and close the file.

4. If Hilton appeals the denial of the petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida this 29th day of March, 2018.

MARCIA MORALES HOWARD
United States District Judge

Lc19

Copies:

Counsel of Record

Pro se petitioner